Case No. 09-0153 N. Weiss Peel Products v. First American Properties, LLC And when you do approach, please introduce yourself. And the party you represent. Good morning. May it please the Court. My name is Maryann Sherwani, and along with my colleague Gerald Haberhorn, we represent Plaintiff NICO Products Company on appeal. Our main issue on appeal today has to do with the right of first refusal under the second part of paragraph 10B of the lease. Under the terms of this section, if the landlord receives an offer and intends to accept, it has to first give written notice thereof to the tenant. The tenant then has the right to purchase at the price and on the terms of the offer by giving notice to the landlord within 10 days thereof. If the tenant accepts the offer, the tenant will be bound to purchase the building strictly in accordance with the terms of the offer. And I'd like to emphasize those words, strictly in accordance with the terms of the offer. That's the offer from the tenant. That's the offer that the tenant makes in response to the offer from a third party? Yes. Okay. Yes. And there's no dispute that the tenant had the right of first refusal here. Absolutely. But he also had the right to say, forget about it. I don't want to inquire any further into that offer made by the third party. And it appears that that's how that letter from the tenant was interpreted by the lower courts. And why isn't that a proper interpretation of that statement from the tenant? Actually, Your Honor, the trial judge, Judge Flannery, never got to the issue of waiver when he entered summary judgment in favor of defendants. Well, that doesn't mean we can't address it, does it? That absolutely doesn't mean that. Of course, your review is de novo on a summary judgment motion. But we believe that that November 4th letter that you're referring to was not a waiver of the right of first refusal. Well, I'm not saying that it's necessarily a waiver. It's more like you don't have to provide me any more information. And I think that's how the landlord took it, and therefore he didn't provide anything further. But, Your Honor, actually what the letter requested was additional information. It did quite the opposite. It said, you know, I see the purchase price in this letter of intent, and that's what we'll be calling it, the letter of intent. And it seems awfully high to me. It seems far above the fair market value. But then, again, isn't that what it actually sold for, $3 million? Is there any question? There is a question whether it sold for $3 million. How much? The $11 million represented three properties. What is your estimation of what the property sold for? Your Honor, actually there was no allocation made between the three properties, so we don't know what it sold for. It was a total of $11 million, right? Yes. But the assertion, your argument is that the $3 million that your opponent keeps dandying about was never, never part of any document that your client looked at. There was no contract reflecting the sale of the Nyquil building for $3 million. Was there any testimony then, are you saying at trial? This was a jury trial. You're saying there was no testimony at the jury trial that the one property that they had the right to purchase, there was no testimony to its value? Your Honor, the testimony at trial actually went to the first part of the right of first refusal. It didn't concern the summary judgment motion. The testimony on file, actually, Mr. Liston, who was with VIP, the third-party purchaser, he said that the value of the property was $42.60. If you multiply that by the square footage, that's actually $2.5 million around there. His partner also testified that, or he stated that his partner also calculated the value of the property, and he came at $43.41 per square foot. That's, again, around the higher side of $2.5 million. And there was also an appraisal done for VIP's lender, and they came up with a value of $2.6 million. Okay, well, let me ask you this. Does this right to purchase say that if they want to exercise their option, they have to purchase strictly within the terms of the offer? Yes. All right. And did the letter indicate, the letter that was tendered to Stahursky, Mr. Stahursky? Correct. Did that indicate a purchase price of $3 million? It did. All right. So what you're saying is they wouldn't have to purchase it for $3 million? Is that what you're saying? They wouldn't have to purchase it for $3 million because the offer wasn't really? What we're saying is that that letter, that October 24th letter. Didn't provide the material terms. It didn't provide the material terms. If you look at Suburban Auto, that case is right on point. What you're saying is that they never really satisfied their obligation to give you or give your client the accurate information to exercise its right of refusal. But the letter does say from your client, we hereby decline to exercise right of first refusal. And that can simply indicate that they don't want any more information and that the information they provided is, there is no negotiation. There is no further inquiry needs to be made. Your Honor, there's a critical part in that letter which states, assuming that the offer for which you have forwarded to us accurately reflects the economics of the entire offer. And that is the key portion of that letter. And if you look at the remaining part of the letter, it says in the event that the offer does not accurately reflect the net consideration being paid for the property, please send me more information. There was no other information sent about the price of the property. What if the landlord doesn't agree with you that that is the key information? They found the key information to be, we hereby decline to exercise right of first refusal. And we have two business individuals here, and if you insert such language in a letter in response to the notice that the landlord provided, it falls on the tenant to have worded its letter a little better than it did. But, Your Honor, it also falls on the landlord to enable the tenant to exercise its right of first refusal. And in that, the landlord is charged with giving an offer, and the offer must have the material terms of the deal. Here, what was ultimately accepted does not mirror the offer. It's a completely different deal. All right, so let's go to what was actually, let's say you're correct, that the actual purchase price was $2.5 million instead of the $3 million. Does your client have to make an assertion that it was ready and able to purchase at $2.5 million, and in fact taken steps to make sure that its right of first refusal could have been vindicated? But once the deal is closed, the right of first refusal pretty much disappears. Your Honor, actually, if you look at the right of first refusal, there is key language in there, and it says plaintiff has, the tenant, sorry, will have the right to purchase the building at the price and the terms of the offer by giving notice to the landlord within 10 days after tenant's receipt of the landlord's notice. Now, there is a reason for those 10 days. It's a not a lot time, and it's the same reasoning that the suburban auto court employed for the 48-hour time period. That time period is for the tenant to receive the real estate contract, the offer, and decide by looking through all the terms, because remember, it is bound to purchase the building strictly in accordance with the terms of such offer. So the tenant needs the opportunity to look at the offer, to look at the real estate contract, not a few terms that are in the letter of intent, and say, you know what, I agree. I would like to step into the shoes of the third-party purchaser and buy this property. There is a reasoning for that 10-day period. I follow you. You mentioned suburban, and that gives me an opportunity to make an inquiry with respect to a couple of paragraphs that are contained in your yellow brief. Absolutely. At page 14. You never abandoned your argument that the first part of paragraph 10B was breached by your opponent. But then you say in the second paragraph of that argument, with respect to the first part of paragraph 10B, the pleadings on file show that defendants had formed a desire to sell. Correct. What pleadings on file show that? There's no citation to the record, because this is the yellow brief, so I'm not really holding you to that. The pleadings on file that we're referring to are the allegations in the complaint that they weren't given the offer. And this actually goes to our argument as to the trial court. As I take it, then, your reading of the entire contract, the entire dispositive paragraph, is that any time, or maybe it's a question of fact is what you're saying, any time the landlord received any kind of an inquiry. Correct. Okay. It could somehow be you could, and they entertained that inquiry by entering into discussions. Right. That could be an argument that they had an intent to sell. Absolutely. Is that your argument? Yes, with respect to the first part. I think I understand. With the first part, if you look at the evidence on file, and this is the basis for our argument that the judge should have granted judgment on the pleadings. And I would like to remind this Court that that is reviewed on a de novo basis. Would that require, as you read the contract in 10B, for the landlord to solicit an offer from you before they even communicated to you the terms that they might negotiate with the third party who originally started all of this? No. No. What would they have to do in order to comply? So according to this language, in the event that the landlord desires to sell the building. And you're saying that that can be inferred by the fact that he entertained discussions from a third party. Absolutely. As early as September of 2003. So at that point, he now has some kind of an obligation to bring you into the mix. He has to offer it to us first. But not on the same terms. Didn't the jury specifically consider what you're asking us now to decide, and they rejected that completely because they were given a specific verdict form relative to the first paragraph. Yes, Your Honor, but it's our decision. So how do we on de novo review say that that jury verdict, you're not asking us to find the jury verdict was against the manifest weight of the evidence. No. How do we mesh this request for judgment on the pleadings when the jury had this specific issue in front of them and they answered the question, they didn't go on to consider any damages because they concluded. Correct. That the defendants never breached that provision. Your Honor, the motion for judgment on the pleadings, of course, was brought prior to trial, and we believe that this issue should never have gone to a jury. That's your argument. It should not have gone to a jury. Because there was a summary judgment against you with respect to the implication of the first part of the paragraph. Absolutely. That had already been decided in the favor of the landlord according to the trial judge. Exactly. The evidence on file with respect to that first part of paragraph 10B. But two judges, two different judges concluded that there were questions of fact whether there was ever a desire to sell. Two judges. Yes. Then a jury also concluded, well, they concluded that there was no desire to sell. And if we're talking about forfeiture or waiver, let's say a judge makes a mistake on a judgment on the pleading sort of motion and says, well, I'm not going to rule on it. I'm going to let the trier of fact decide this precise question. So why doesn't that judgment on the pleading's motion merge into the eventual trial, and then it's a question of, to preserve the issue, it's a question of demonstrating that the jury verdict is against the manifest weight of the evidence. Otherwise, it's not reviewable. Your Honor, it's still our position that this issue should not have gone to the jury. It was not a question of fact. The evidence on the. Wait a while now. If the paragraph that begins, in the event the landlord desires to sell the building. Sounds like a fact question. Well, except that they didn't. The trial judges just granted summary judgment to the landlord, which means that I would suspect that they were saying that there was no evidence that they desired to sell the building, which would have triggered their obligation to make an offer to you first or solicit an offer from you first. So what you've got basically, I suppose, is an ambiguity in the contract language. Well, we maintain that there is no ambiguity in the contract language. Are you sure you want to stick to that position? Because maybe the ambiguity would help you out. Your Honor, if it would help me out, absolutely. But I would just like to make one point. I'm not sure. I mean, there's some very good lawyering going on here on both sides, I might add. I mean, I was impressed with the lawyering in this case on both sides. But at the same time, well, let it go at that. I just paid you all a compliment. You're going to have to sort of wrap up. Then you'll get some time. Okay, absolutely. Can I just make one point about the evidence that was on file in support of judgment on the pleadings? With respect to whether there was a desire or not, both Mr. Finelli and Mr. Liston testified that in September of 2003, they approached Mr. Jordan and asked if he was interested in selling the building. He responded, we just might. He then showed them the buildings that he was interested in selling, and he gave them a price of $11.5. This is before that October 24th letter ever came into play here. And on October 17th, again, before that October 24th letter came into play, First American sent rent roll information to VIP. So it is undisputed that there was a desire formed at that time. Well, isn't that really a question of fact? Because the word that you just pointed out to us is, we might. From that, you're saying, as a matter of law, the trial judge should have given you judgment on the pleadings? We might. Is that a question of fact that remained for a jury to decide whether they ever formed an intent to sell this building? That is the question. It is not a question of fact, because it wasn't just his response of, we just might. He actually gave a number. How about this? How about the fact that someone asked him, would you be interested? Now, where is that coming from? Someone else. All I'm saying is, that suggests a factual question, not something that a judge could decide as a matter of law. And a jury, in fact, did decide this, that they didn't have a desire, according to the language of the contract. Well, we maintain that it is not a question of fact. We maintain that it wasn't just, he said, we, you know, I just might. He gave a price for the three properties. And so, and he gave rentable information. And that raises the other question. That raises the other question. Are you, under this right of first refusal, are you requiring that the owner of these three buildings separate those three buildings and provide a contract for the single building so that you, and then, can properly assess what portion of the total price belongs to that building that you're interested in and be able to exercise your right of first refusal? Absolutely. That's the way it works. Absolutely. The offer and the acceptance have to mirror each other. How else is the tenant under this right? What if the buyer says, I'm not going to do that? It's a package. It's a total package or no package at all. They don't want to separate it into three different purchases. They want to separate it as a package. Or they want to buy it as a package. The landlord needs to allow the tenant to exercise his right of first refusal. Well, and I agree with you. That's clearly part of the contract. But you could have also, with respect to the initial letter, as a matter of good lawyering, again, I suppose, is that you could have, instead of saying it's obviously too high, you could have made a counteroffer. But it wasn't a lawyer. It wasn't a lawyer. You didn't specify the price. Your Honor, there was no offer given to us in the first place. I mean, that's our argument. The offer is the real estate contract. And there was never a real estate contract for the purchase of the Nyko building for $3 million. All right.  All right. We'll give you some time. Thank you. Thank you very much. There's a lot to discuss. Good morning. Diane Silverberg, if it pleases the Court, on behalf of FAI Dantzscher and First American Properties. There were a number of items that had been discussed already in the myriad facts that present themselves in this case. And I just wanted to correct what I think may be some misimpressions that may assist you in reaching your decision. First of all, it is uncontested, both based on the testimony and deposition of Nyko's corporate counsel, as well as the testimony of Mr. Stahurski, who was the president of Nyko, that that 11-4, that November 4th letter, was written by Nyko's corporate counsel. So it was a lawyer. It was a lawyer who wrote that. Certainly somebody who, and I might note, the attorney who negotiated the right of first refusal. So certainly somebody in a position to know if, in fact, he felt terms were missing, he certainly could have asked at that juncture. We would like to exercise the can I do so. Whatever happened to that partial summary judgment that you got with respect to the first part of the paragraph? Yes, and I'm glad you asked. Was that exhumed for the jury's benefit? And who exhumed it? Well, there were actually, I suppose, three separate rulings, if you will, on summary judgment. Back in September of 2007, when the case was with Judge Preston, he heard all three. Yeah, we know that. What happened? When we got to February. Did the jury have it in front of them? The jury necessarily had to consider the second part of 10b. Okay. Because, for contrary reasons. But what about the first part? The first part was strictly in front of the jury. The court had denied summary judgment as to the desire issue, finding that there was a question of fact. Okay. And put that question, whether there had been a breach of the first part of paragraph 10b in front of the jury. Now, one of the issues that counsel had raised was this question of, well, should there have been any discussion at all of the second part of paragraph 10b? And we, of course, explained and ultimately persuaded the court when it came to jury instruction time, that both parts had to be there. Because necessarily, if you have a desire to sell, in the context of receiving an offer, it's the second part of 10b that comes into play, not the first part. And counsel has, predecessor counsel, had persisted in insisting that only that first part should be considered by the jury. We asked, and the court agreed, that the entire paragraph be put before them, so they could have the context of what does desire mean. Without that second part, what desire means is seen in a vacuum. And if it comes in the context of an offer, it would have had no meaning to the jury. I also think it's important to note that the right of first refusal itself says nothing about a purchase and sale agreement. No, it says offer. It says if you get an offer. And as I think is clear, it is uncontested that the purchaser, the prospective purchaser, VIP, absolutely treated this as an offer. The testimony of Liston in his deposition was that in my world, where I sell hundreds of thousands of square feet of industrial property, these are all the material terms. And suburban auto doesn't say anything differently. What were the terms of the letter? If you could summarize whether this was an offer or not, what were the terms? The terms of the offer included the address of the property. It included the purchase price. Due diligence. It included due diligence, the type of due diligence, physical and environmental testing, at the purchaser's cost. It set the closing date. It identified the amount of the earnest money. It said how much the earnest money had to increase by and by when. It identified the broker. It identified the percentage commission that was going to be paid to the broker. And it identified who the purchaser was. Was there an issue before the jury to decide whether or not this was an offer? No, that issue was not before the jury. No, because it had been resolved on a summary judgment. And once that issue is resolved, that it, in fact, is an offer that triggered the right of first refusal, which also could involve the decision not to engage anything further regarding that offer, doesn't that come close to ending everything? That's certainly our position. However, Judge Flannery, in evaluating the testimony before him on summary judgment, concluded that there was a shimmer of doubt as to this question of whether desire had formed. And if so, did it form before they got the offer that they intended to accept? So for that limited issue, that is, as to the first part of paragraph 10B, he decided that issue is a question of fact and it goes before the jury. And as Justice McBride pointed out, the jury heard the evidence on that and concluded that there had been no breach by FAI dandruff. But if the offer triggers the 10-day period and there is no response to that offer within the 10 days, what more does the landlord need to do? Well, I think for being definitive in going forward in closing the transaction, it would want to know that it had waived. And in fact, in this case, it did have what it felt was an express waiver. The so-called conditions on the waiver that counsel identified in her remarks were ones that had no application here. So there was no information to provide in that regard. And I should note that the conduct of the tenant in this regard is entirely consistent with a party who had no interest in pursuing its right of first refusal. There were no incessant calls, letters, certified letters, camping out at the lessor's headquarters to be sure that it got whatever information it felt was not included. Again, the letter that was sent on November 4th was written by corporate counsel. He could easily have said, we're interested, but we can't make a final decision until we get X, Y, and Z. And that was not done. Regarding what purports to be a legal issue as to the judge's ruling on the judgment on the pleadings, the motion remaining a viable issue before us. I agree with your conclusion. I believe that that issue was put before the jury, and the jury necessarily resolved that issue in connection with its reaching a verdict in favor of the defendant, FAI, in this case. There are obviously a number of issues that we put before you. I'm happy to discuss them further if you wish. I sense from the questions that the courts understand the issues. We obviously have the issue of the judgment on the pleadings in our favor, and we had identified a number of issues that we felt were the court to have any issue on the other matters before you on appeal. We felt that those could serve as bases for affirming the underlying decision and respectfully direct the court to our brief on those points. All right. Thank you very much. Thank you. Ms. Scherwani, what about the, if you call it a concession by your client, that an offer was extended and that is all that really needs to trigger the right of first refusal on your client's behalf, and once an offer is made, the 10 days begins to run, and once those 10 days are over, the discussion is ended. We believe, again, that- Was an offer made? An offer was not made. And the offer, again, would have been sending us a copy of the real estate contract. What more did your client require other than the information that was provided? One of the material terms that was in the real estate contract was a 40-day inspection contingency, and that's critical. That basically states that for 40 days, the purchaser is allowed to back out of the transaction. That was not in the letter of intent, and in suburban, Justice Hoffman noticed the same deficiency. There was, I believe, an inspection contingency and an attorney review period that was not contained in the notice. So I think that's a critical material- Here's one of my problems with your challenge to whether an offer's been made. If no offer's been made, then I wonder whether you can base your challenge on the right of first refusal not being extended to you because the right of first refusal only is triggered by an offer. Correct. But you are contesting that your right of first refusal was inadequate as opposed to never really given to you. There was an offer made here. It was the real estate contract. It was not the letter of intent. And does the contract say that an offer is equivalent or must be the same as a real estate contract as opposed to an offer which may have a different meaning to a lot of people? According to Suburban Auto, the offer- and I would like to point out- Did Suburban Auto, though, involve a situation where the tenant had the right to purchase one property but there were three properties being offered to purchase in that case? No, Suburban Auto dealt with one property. Well, do you see that as any difference? I mean, did First American have to- or FAI, whichever one- did they have to tender an offer involving properties that NYCO had no option to purchase? Absolutely not. We did not have a right of first refusal with the other two properties. But the point that I would like to convey is that we did have a right of first refusal with respect to the NYCO building and we never received a real estate contract dealing with that property for the purchase price of $3 million. Let me ask you this. Did general counsel for your client treat the notice that was provided by the landlord, by the owner, as an offer to the extent that he said the right of first refusal has been declined? Did he treat it as an offer? He used the words offer, but our position is whether it's an offer or not is actually a legal question. Whether somebody refers to it as an offer is not dispositive in this case. All right, thank you very much. You can wrap it up. Just for the reasons stated today and in our brief, we would just ask for reversal of judgment and the attorney's fees vacated. All right, thank you very much. Thank you. All right, the case will be taken under advisement.